OPINION OF THE COURT
Richard J. Montelione, J.
Because of common issues of law and fact, the court consolidated for trial the following matters: Charles Deng Acupuncture, PC, as Assignee of Kesha James v Titan Ins. Co. (CV-005920-14 [the trial commenced and concluded on Feb. 16, 2016]); Pravel, Inc., as Assignee of Yvette Decosta v Nationwide Ins. Co. (index No. CV-019112-14 [the trial commenced and concluded on Feb. 16, 2016]); and Jules Francois Parisien, MD, as Assignee of Hans Destine v Progressive Ins. Co. (index No. CV-032931-14 [the trial commenced and concluded on Feb. 17, 2016]). These matters will result in separate decisions, orders and judgments. The court has considered each party’s posttrial memorandum of law and/or copies of cases provided to it.
In these actions by providers to recover assigned first-party no-fault benefits, the parties stipulated that the plaintiffs met their respective prima facie burdens by timely mailing of bills for payment. (See 11 NYCRR 65-1.1.) The burden now shifts to the defendant to show timely mailing of the notices of the examinations under oath (EUO) and the failure of the providers to attend the scheduled EUOs. (See 11 NYCRR 65-3.5, 65-3.6.)
When the issue involves ETJOs, defendant must prove that its EUO requests were timely mailed and that plaintiff’s assignor failed to appear for same. (See Crescent Radiology, PLLC v American Tr. Ins. Co., 31 Misc 3d 134[A], 2011 NY Slip Op 50622[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; Crotona Hgts. Med., P.C. v Farm Family Cas. Ins. Co., 27 Misc 3d 134[A], 2010 NY Slip Op 50716[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]; Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720 [2d Dept 2006].)
“Such a showing is established by affidavit on motion for summary judgment and by live testimony at trial (see generally Great Wall, 16 Misc. id at 25; *218 Power Acupuncture P.C. v. State Farm Mut. Auto Ins. Co., 11 Misc3d 1065, 816 N.Y.S.2d 700, 2006 NY Slip Op 50393[U] [Civ. Ct, King’s County 2006]; Roberts Physical Therapy, P.C. v. State Farm Mut. Auto Ins. Co., 14 Misc3d 1230[A], 836 N.Y.S.2d 495, 2006 NY Slip Op 52565[U] [Civ-Ct, Kings County 2006]; AVA Acupuncture P.C. v. ELCO Administrative Services Co., 10 Misc3d 1079[A], 814 N.Y.S.2d 889, 2006 NY Slip Op 50158[U] [Civ Ct, Kings County 2006]).” (See New Era Massage Therapy PC v Progressive Cas. Ins. Co., 2009 NY Misc LEXIS 2554, *12, 242 NYLJ 2 [Sup Ct, Queens County, June 26, 2009, CV-065009-08/QU].)
The court accepts the testimony from defendant’s witnesses regarding the policies and procedures for sending out EUO scheduling letters and the court finds that defendant proved timely mailing of the EUO scheduling letters.
The court further accepts the testimony of defendant’s witness, Jamila Shukry, Esq., a senior trial attorney, regarding the policies and procedures concerning the taking of testimony at the examination before trial and the documentation regarding an EUO “no show.” The witness testified that the transcripts were generated in the usual course of its business, that it was the usual course of its business to. generate such a record, and that it was made at the time reflected in the transcript. The witness who appeared at the trial, however, was not the assigned attorney and was not personally present at the place where the EUOs were scheduled to take place.
The only remaining issue before the court is whether or not the EUO transcripts allegedly generated at the scheduled EUOs are business records which may be used to show that the respective providers failed to appear at their scheduled EUOs, and the weight to give these records if they are admissible.
The court reviewed the certified EUO transcript of February 21, 2014 alleging the failure of a representative of Pravel, Inc. to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit A); the certified EUO transcript of March 11, 2014 alleging the failure of a representative of Pravel, Inc. to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit B); the certified EUO transcript of October 15, 2013 alleging the failure of a representative of *219 Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit C); the certified EUO transcript of October 31, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit D); the certified EUO transcript of December 2, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit E); the certified EUO transcript of December 11, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit F); the certified EUO transcript of December 18, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit G); the certified EUO transcript of December 27, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Yvette Decosta, exhibit H); the certified EUO transcript of September 19, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Kesha James, exhibit A); and the certified EUO transcript of October 7, 2013 alleging the failure of a representative of Charles Deng, LAC to appear and the scheduling letter attached (re: assignor Kesha James, exhibit B).
There is no question that the certified EUO transcripts can be used in a motion for summary judgment (see MML Med. Care, P.C. v Praetorian Ins. Co., 46 Misc 3d 127[A], 2014 NY Slip Op 51792[U] [2014]; Active Chiropractic, P.C. v Praetorian Ins. Co., 43 Misc 3d 134[A], 2014 NY Slip Op 50634[U] [2014]), but there appears to be no cases on “all fours” concerning the use of such EUO transcripts at trial.
The gravamen of the plaintiffs objection to the transcript being admitted into evidence is that the transcripts are hearsay, that the transcripts were not prepared by the defendant’s law firm, but by the stenographer, and by allowing such a record to be admitted into evidence denies the respective plaintiffs their right to cross-examine the person who allegedly made the record and therefore cannot be a business record. Clearly the transcripts are hearsay, but the question is whether or not the transcripts of the EUO “no shows” are business records which are an exception to the hearsay rule and admissible at trial.
*220 CPLR 4518 (a) reflects the following:
“Generally. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. An electronic record, as defined in section three hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record. The court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.” (Emphasis added.)
The court in Kearney v City of New York (144 Misc 2d 201 [Sup Ct, Kings County 1989]) admitted into evidence the unsworn transcript of a district attorney as a business record to show mandated disclosures made to the defendant in the presence of his counsel. The present matters are distinguishable because the court in Kearney considered a transcript of criminal proceedings made in open court and not in the offices of counsel using a privately paid stenographer. Notwithstanding this distinction, the court in Kearney found a legal duty on the part of both the attorney, as an officer of the court (22 NYCRR 700.4 [a]; People ex rel. Karlin v Culkin, 248 NY 465, 470-471 [1928]; Matter of Mitchell, 40 NY2d 153, 157 [1976]), and the court’s stenographer, to accurately report the information recorded (Judiciary Law arts 9, 15; § 292; see also Judiciary Law § 90).
This court must now consider whether the EUO transcripts, some of which are electronically signed, meet the requirements of the business exception to the hearsay rule under CPLR *221 4518 (a). Here, whether in or out of court, an attorney is an officer of the court (22 NYCRR 700.4 [a]) and is subject to discipline and severe sanctions if s/he misleads the court (Judiciary Law § 487; Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.3, reprinted in Judiciary Law Appendix).
Turning to the certifications made by the stenographers, each certification, except for the name of the respective stenographer, reflects the following:
“I, Christa D’Alessandro, a Notary Public in and for the State of New York, do hereby certify:
“THAT the within is a true and accurate transcript of this statement on the record.
“I further certify that I am not related, either by blood or marriage, to any of the parties to this action; and
“THAT I am in no way interested in the outcome of this matter.
“IN WITNESS WHEREOF, I have hereunto set my hand this 23rd day of April, 2014.
“Christa D’Alessandro.”
To begin with, a notary public must be licensed by the State of New York, be of high moral character, and must not be convicted of a felony or certain other crimes (Executive Law § 130). A notary may be removed from office “for acts of misconduct as related” since he (or she) is a public officer whose right to remain in office is measured not only by his (or her) activities as such but also by trustworthiness and competence exhibited in other areas in which the public is concerned. (Matter of Patterson v Department of State of State of N. Y., 35 AD2d 616, 617 [3d Dept 1970]; NY CLS Executive Law § 130, Notes to Decision [Case Notes].)
A notary is required to place a statement as to her/his authority, the name of the county in which s/he originally qualified, and the date upon which her/his commission expires. (See Executive Law § 137.) What is crucial for the court’s consideration is found under Executive Law § 137,
“If any notary public shall wilfully fail to comply with any of the provisions of this section, he [or she][*] shall be subject to disciplinary action by the secretary of state. In all the courts within this state the certificate of a notary public, over his [or her] *222 signature, shall be received as presumptive evidence of the facts contained in such certificate; provided, that any person interested as a party to a suit may contradict, by other evidence, the certificate of a notary public.” (Emphasis added.)
This court finds that given the reliability of unsworn statements made by attorneys as officers of the court (22 NYCRR 700.4 [a]), and the standards and licensing requirements of notaries in the State of New York (Executive Law § 130), and the notary’s certificate with its “presumptive evidence of the facts contained in such certificate” (Executive Law § 137), and the language within the certificate “THAT the within is a true and accurate transcript of this statement on the record,” and given that the court credits the testimony of the defendant’s witnesses that the transcripts were generated in the usual course of its business and it was in the usual course of its business to generate such a document, and further given that such transcripts are routinely used and accepted by courts in motions for summary judgment, and given that plaintiff, as an “interested party,” had the opportunity to “contradict, by other evidence, the certificate of a notary public,” and the failure of the plaintiff to appear at trial or to contradict by other evidence the certificate of the respective notaries, this court admits into evidence all the EUO transcripts in this matter. The court further notes that it would be the duty of the defendant to make a record when a party or assignor fails to appear two times for an EUO because unless documented there is no basis to deny benefits for a failure to appear at an EUO under the no-fault law {Stephen Fogel Psychological, P.C.).
This court recognizes there is a qualitative difference between a transcript containing pretrial testimony of a party where CPLR 3117 (a) (2) applies and a transcript which contains an unsworn statement which is certified by the stenographer who is a notary and where CPLR 4518 (a) may apply.
The court in CPT Med. Serv., P.C. v Utica Mut. Ins. (12 Misc 3d 237 [Civ Ct, Queens County 2006, Bernice D. Siegal, J.]) determined that an EUO transcript, which involved an assign- or who was not a party to the action, cannot be used in the same manner as a real party in interest under CPLR 3117. This decision is consistent with other holdings regarding the use of depositions from General Municipal Law § 50-h hearings and the inadmissibility of such transcripts when used against *223 parties who were not given prior notice of such proceedings. (See and cf. Rivera v New York City Tr. Auth., 54 AD3d 545 [1st Dept 2008].) But in the present matter, the real party in interest, the respective providers, never gave any testimony whatsoever because it is alleged each failed to appear altogether. None of the cases cited by either side considered whether the EUO transcript can be used as a business record at trial under CPLR 4518 (a).
The court in Rizz Mgt. Inc. v. State Farm Mut. Auto. Ins. Co. (20 Misc 3d 1102[A], 2008 NY Slip Op 51191[U], *4 [Nassau Dist Ct 2008, Andrew M. Engel, J.]), in the context of a motion for summary judgment, refused to consider the EUO transcript, but that court had a very good reason for doing so because, “ [n] otably absent from the transcripts submitted are certifications as to the transcripts’ accuracy, executed by the Notary Public who purportedly took the testimony.” In the instant matter, these certifications are attached to each of the transcripts.
Plaintiff argues that the transcripts are neither affirmations of counsel nor affidavits of laypersons and are nothing but self-serving. Plaintiff further argues that the stenographer transcribes nothing more than an unsworn statement of what was said by defendant’s counsel. But most business records are not affirmations of counsel or affidavits, but simply records kept in the usual course of business or profession to reflect “any act, transaction, occurrence or event.” (See CPLR 4518 [a].) What makes the EUO transcripts “inherently highly trustworthy” is the consequences to the attorney who misleads the court (Judiciary Law §§ 487, 90; Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.3, reprinted in Judiciary Law Appendix), the loss of licensure of the notary public for failing to accurately transcribe which is the backbone which allows the “presumptive evidence of the facts contained in such [stenographer’s] certificate” (Executive Law § 137), and the right of the plaintiff to cross-examine and otherwise challenge the defendant’s witnesses. The arguments that plaintiff has made in its memorandum really apply to the weight given the EUO transcripts and not the admissibility of these exhibits as business records.
This court now weighs the evidence in the form of the EUO transcripts, along with the testimony regarding the policies and procedures of the defendant, and finds that the defendant has proved by a preponderance of the evidence that the provid *224 ers have failed to appear at least two times for their respectively scheduled EUOs. No provider appeared at trial to testify.
Based on the foregoing, the clerk is directed to issue a final judgment in favor of the defendant and dismiss the complaint.

* The pronoun inserted in the brackets was to balance the referred gender found within the Executive Law without changing its meaning.